FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

99 APR 23 PM 3:20

U.S. DISTRICT COURT
N.D. OF ALABAMA

MONARCH TILE, INC..,

    Plaintiff,

vs.                           CASE NO. CV-96-J-1511-NW

THE CITY OF FLORENCE,
ALABAMA,

    Defendant.

ENTERED
APR 23 1999

## MEMORANDUM OPINION

The plaintiff having filed a motion for partial summary judgment (doc. 12) and the defendant having filed a motion to dismiss or, alternatively, for summary judgment motion (doc. 9) and the parties having filed responses and memoranda of law in response thereto and the court having set this case for hearing on the court's April 19, 1999 motion docket and the court having heard oral arguments on said motion, and the court having considered said motions, responses, memoranda and arguments, the court finds as follows:

### FACTUAL BACKGROUND

Plaintiff filed this suit for cost recovery and contribution under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9607 and 9613. The defendant owned the real property which underlies this action from 1952 until it was sold to

1

46

the plaintiff in 1988. The plaintiff then sold the property to the Industrial Development Board on August 21, 1989. Complaint at ¶ 9.

This property was acquired by the defendant pursuant to the Wallace Act §11-54-21(a), Code of Alabama 1975. This Act was passed to promote industry in Alabama by authorizing municipalities to acquire, own and lease property and thereby inducing manufacturing, industrial, commercial and research enterprises to locate in the state. That Act further states that its purpose is not to allow any municipality itself to operate any manufacturing, industrial or commercial enterprise. Pursuant to this Act, the municipality was authorized to acquire property, lease it and issue revenue bonds to defray the cost of acquisition of the property and improvements thereto. § 11-54-22, Alabama Code 1975. The municipality could not pay out of its general fund to acquire property under the Wallace Act but instead could only pay for the same from the proceeds from the sale of bonds. § 11-54-30, Alabama Code 1975.

In keeping with the Wallace Act, the defendant issued a Mortgage and Indenture of Trust which stated that the defendant was to acquire property and then convey the same to the Trustee, and to secure the funds to finance the construction and acquisition of this project, to issue bonds. Exhibit B to defendant's memorandum. The defendant covenanted and agreed in the Mortgage to keep the property leased at rentals sufficient to pay the principal and interest on the bond issue. The defendant further covenanted to apply all rents, revenues and income to the payment of the principal and interest on the bonds. The Mortgage also

specifically stated that this bond issue was payable only out of the rents, revenue and income from the lease of this property. The defendant then executed the mortgage and "granted, bargained, sold, assigned..." to the Trustee all of the following property, revenues and income including [t]he project to be acquired and the land on which it is located; all of the right, title and interest in the parcels of land; the agreement between the defendant and Stylon (the lease); and all of the gross rents, revenues and incomes derived from the lease until such time as the bonds were paid in full. The defendant further covenanted not to agree to any recission of the lease without express prior written approval of the Trustee, which was prohibited from so consenting without written approval of at least seventy-five percent of the bond holders. The lessee (Stylon) was required to keep and maintain the project in good repair and operating condition and to pay the cost of insurance on the property. Furthermore, leases were subject to the approval of the Trustee.

The defendant was not allowed any free use of the property. While the defendant had an obligation under the mortgage to maintain the property in good repair, the mortgage specifically allowed the defendant to discharge this obligation be requiring the same of the lessee. The defendant was required to keep a policy of insurance, made payable to the Trustee and defendant and deposited with the Trustee, with the Trustee having the sole right to receive the proceeds therefrom.

The defendant was required to deposit the entire proceeds of the bonds in a special construction fund to be held in trust by the trustee, to be expended for the costs of acquiring

the project. Exhibit C to defendant's memorandum. The rent from the premises was paid directly to the trustee by the lessee. The lessee was also responsible for paying the trustee all fees and charges of the trustee for serving as trustee under the mortgage as well as all taxes on the property.

The defendant leased the property to Stylon Southern Corporation, which manufactured ceramic tile at this location. Stylon was an "operator" of the facility as such term is defined by CERCLA from 1953 until the company bankrupted in 1973. 42 U.S.C. § 9601(20)(A)(ii). The parties do not dispute that this property was a "facility" as such term is defined by CERCLA, 42 U.S.C. § 9601(9), nor that Stylon used materials which are within the term of "hazardous substances" under CERCLA, 42 U.S.C. § 9601(14). Furthermore, the parties agree that due to Stylon's activities "releases" of the hazardous substances into the environment occurred at the facility. 42 U.S.C. § 9601(22), 42 U.S.C. § 9601(8).

In conjunction with a lease dated September 1, 1973, the defendant then leased the property to the plaintiff until May 26, 1988, when the plaintiff purchased the property outright. Complaint ¶ 19. On August 31, 1989, the plaintiff then conveyed the property to the Industrial Development Board, which leased the property back to the plaintiff by lease dated that same date. *Id.* In December 1987, a Site Characterization Report documented elevated levels of barium, cadmium, lead, zinc and other metals. Complaint at ¶ 20. Further investigation and assessment continued through August 1994. These investigations,

assessment reports and removal actions constitute "response" actions within the meaning of such under CERCLA. 42 U.S.C. § 9601(25).

## CLAIMS OF THE PARTIES

The plaintiff filed this suit against the defendant alleging that 1) the defendant is jointly and severally liable to plaintiff for all past, present and future response costs incurred by plaintiff at the facility; 2) that the plaintiff is entitled to contribution from defendant under 42 U.S.C. § 9613(f); and 3) the plaintiff is entitled to a declaratory judgment against the defendant that the defendant is jointly and severally liable. Complaint at 11-12.

In order to make out a cost recovery claim, the plaintiff must prove that the defendant is within one of the four classes of "covered persons" under the Act. *See* 42 U.S.C. § 9607(a). The defendant argues that it held only "indicia of ownership" primarily to protect its security interest in the property and therefore is not within the tern "owner" as defined by the Act. 42 U.S.C. § 9601(20)(A). *See also* 42 U.S.C. § 9601(20)(G)(vi) (1996 amendments) (defining "security interest"). The defendant alleges that it held only "bare legal title" to the property to protect it security interest. No allegation is made by the plaintiff that the defendant is anyway operated or managed the facility in question.

Defendant therefore claims that it is exempt from liability under 42 U.S.C. § 9601(20)(E)(i).[1] In support of this argument, the defendant states that is held rights under

---

[1] The language found in the 1996 Amendments at 42 U.S.C. § 9601(E)(i), "Indicia of ownership to protect security interest" is virtually identical to that found at 42 U.S.C. § 9601(A) both before and after the 1996 Amendments to the Act.

5

the lease to Stylon and subsequently to plaintiff to secure the repayment of the money the defendant owed on the bond issue used to purchase the property and construct the facility. Under § 11-54-25 Ala.Code, the defendant had to pledge the money from the lease payments to the bank to pay for the bond issue.

## STANDARDS FOR GRANTING SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

## LEGAL ANALYSIS

The court finds that in the case before it, no factual dispute exists. The parties agree on what the facts of this case are. The sole issue before this court is given these facts, was the defendant an "owner" of this property as that term is defined in CERCLA, so that liability for some of the costs of clean-up can be borne by the defendant. Because of the substantial development of the record by the parties, this court shall consider the defendants motion seeking alternative relief as one for summary judgment. *See* Rule 12 (b), Federal Rules of

Civil Procedure (where "matters outside the pleading are presented to and considered by the court, the motion shall be treated as one for summary judgment").

This court finds from a review of the applicable law in this area that the circuits are divided over the question of how broad the protection of CERCLA is for property owners who hold title solely to protect a security interest.

For the defendant to show that it held title ownership solely to protect its security interest, it must satisfy a two-prong test, namely that 1) the ownership interest was primarily to protect its security interest in the property; and 2) it did not participate in the management of the property. *In re Bergsoe Metal Corp.*, 910 F.2d 668 (9th Cir.1990); *Reading Co. v. City of Philadelphia*, 155 B.R. 890, 903-904 (E.D.Penn.1993); citing *United States v. Fleet Factors Corp.*, 901 F.2d 1550, 1555 (11th Cir.1990). No allegation that the defendant participated in the management on the plaintiff company is made. Thus, this court focuses solely on whether the defendant's ownership interest was primarily to protect its security interest in the property.

In *Redwing Carriers v. Saraland*, the Eleventh Circuit stated that the term "owner" does not have any special meaning under CERCLA. 94 F.3d 1489, 1498 (11th Cir.1996). Thus, Alabama law is controlling in defining the ownership interest of the defendant. *Id.* The term "security interest" was defined by Congress for CERCLA purposes as part of the 1996 amendment to the Act as follows:

> The term "security interest" includes a right under a mortgage, deed or trust, assignment, judgment lien, pledge, security agreement, factoring agreement, or lease and any other right accruing to a person to secure the repayment of money, the performance of a duty, or any other obligation by a nonaffiliated person.

42 U.S.C. § 9601(20)(G)(vi).

The defendant relies heavily on *In re Bergsoe Metal Corp.*, for support of its interpretation that it is within this protection. In *Bergsoe Metals*, the deed to the property was in the name of the Port, the counterpart to the defendant here. The Ninth Circuit stated:

> That the Port holds paper title to the Bergsoe plant does not, alone, make it an owner of the facility for purposes of CERCLA; under the security interest exception the court must determine *why* the Port holds such indicia of ownership. Here, there is no doubt that the Port has the deed in the plant primarily to ensure that Bergsoe would meets its obligations under the leases and therefore under the bonds. In other words, the Port has a security interest in the property.
>
> The Port is in somewhat of a different position than the ordinary secured creditor, who holds indicia of ownership to ensure that it will be paid what it is owed. Here, the port held title to the property not to ensure that *it* would receive payment, but to guarantee that Bergsoe would cover the Port's own indebtedness under the bonds. This does not change the analysis ... the Port's only involvement was to give its approval to the project and to issue the bonds that served as the vehicle for the financing.... Nonetheless, the leases give to Bergsoe all other traditional indicia of ownership, such as responsibility for the payment of taxes and for the purchase of insurance; significantly, the leases assign to Bergsoe the risk of loss from destruction or damage to the property.
>
> Even more telling, however, are the terms of repayment under the leases. Bergsoe's "rent" was equal to the principal and interest due under the bonds. The money was to be paid directly to the Bank as trustee for the bondholders.

*Bergsoe*, 910 F.2d at 671. Applying this to the facts at hand, this court finds that the question of why the defendant *retained* legal title to the property is separate from the question of why

9

the defendant *obtained* the same in the first place. While, as plaintiff argues the defendant clearly obtained title to further economic development, the defendant also clearly retained the same to protect its obligation to the trustee and bondholders on the bonds issued to pay for the project.[2] This protection of an interest in land to ensure payment is a security interest.

After Stylon became bankrupt, the defendant leased the property to the plaintiff here. As with Stylon, the defendant retained title and leased to project to plaintiff. This court finds that the defendant held title not to ensure that it would receive payments under the lease, but rather to guarantee that the plaintiff would cover the defendant's indebtedness owed under the bonds. No genuine issue of material fact exists as to defendant's interest in the property.

## CONCLUSION

There being no material issue of fact, the court concludes that the defendant held indicia of ownership primarily to protect its security interest and that it did not participate in the management of the project. Thus, the defendant city is not an owner under 42 U.S.C. § 9601(20)(A).

In consideration of the foregoing, this court finds that the defendants motion for summary judgment is due to be granted.

---

[2]*See McDonald's Corporation v. DeVenne*, 415 So.2d 1075, 1079 (Ala.1982) (stating that the purpose of the Wallace Act is to attract business to locate or expand in this state). The plaintiff is correct that the purpose of the defendant acquiring the land was to promote business. However, this court finds that the defendant then retaining legal title for the next thirty-five years was not done to promote business, but to ensure payment on its obligation.

It is therefore **ORDERED** by the court that said motion be and hereby is **GRANTED**. The plaintiff's motion for partial summary judgment be and hereby is denied. No issues remaining, this case is hereby **DISMISSED** with prejudice.

**DONE** and **ORDERED** this the ___23___ day of April, 1999.

_____
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE